John Wine, General Counsel Secretary of State's Office State Capitol, 2nd Floor Topeka, Kansas 66612-1594
Dear Mr. Wine:
As general counsel for the secretary of state's office, you request our opinion regarding authorized use of funds held in the permanent maintenance fund of a cemetery corporation. Specifically, you ask whether funds in excess of statutory requirement deposited to the permanent maintenance fund may be used to offset future required deposits to the permanent maintenance fund.
According to the information provided, a cemetery corporation maintained in addition to the permanent maintenance fund required under K.S.A. 1993 Supp. 17-1311, as amended by L. 1994, ch. 229, sec. 4 a separate marker maintenance fund, a fund neither required nor prohibited under state law. The fund was derived from a portion of the amount paid for lot purchases. Recently, the balance of the marker maintenance fund was deposited to the permanent maintenance fund. Since that time, no new deposits to the permanent maintenance fund have been made despite the continued sale of burial lots in the cemetery. Rather, the cemetery corporation considers the marker maintenance fund as an advance deposit to the permanent maintenance fund and is offsetting against the balance of the marker maintenance fund any further deposits required under K.S.A. 1993 Supp. 17-1311, as amended.
Cemetery corporations are subject to provisions set forth in K.S.A.17-1301 et seq. K.S.A. 1993 Supp. 17-1311, as amended, requires that a cemetery corporation maintain a permanent maintenance fund.
 "Such corporation shall maintain . . . a percentage of the purchase price of each burial lot sold by it, or any payment thereon, not less than 15% thereof, for the permanent maintenance of the cemetery within which the burial lot lies, but the total amount set aside shall not be less than $25 for each burial lot at the time of conveyance of such lot. Deposits to the permanent maintenance fund shall be made within 45 days of receipt of moneys for which deposits are required to be made. . . . Moneys in such fund may be held and invested to the same extent as is provided in K.S.A. 17-5004, and amendments thereto. . . . The income of the permanent maintenance fund shall be used exclusively for the maintenance of the cemetery. No part of the principal of the fund shall ever be used for any purpose except for such investment. . . . The treasurer of such corporation may deposit, to the credit of such fund, donations or bequests for the fund and may retain property so acquired without limitation as to time and without regard to its suitability for original purchase. . . . Such maintenance shall include, but not be limited to, mowing, road maintenance and landscaping, but shall not include administrative costs, expense of audits or the portion of any capital expense for equipment used to maintain portions of a cemetery not sold for burial purposes or in use for grave sites." K.S.A. 1993 Supp. 17-1311, as amended.
Each cemetery corporation is required to prepare and forward to the secretary of state an annual report or statement verified by the treasurer of the corporation describing the corpus and any accumulated income in each permanent maintenance fund and any disbursements from the permanent maintenance fund. K.S.A. 17-1312a.
In State, ex rel., v. Anderson, 195 Kan. 649 (1965), the Kansas Supreme Court reviewed the purpose for enactment of legislation requiring creation and preservation of the permanent maintenance fund.
 "The statute, originally enacted in 1901 (Laws 1901, ch. 102, sec. 5), expressed the public concern in maintaining in a seemly manner places set apart as burial grounds and in preventing the maintenance of privately developed public cemeteries from becoming public charges. Being of a remedial nature it is to be liberally construed to effectuate the purpose for which it was enacted (Van Doren v. Etchen, 112 Kan. 380, 383, 211 P. 144). We think the narrow construction of the statute urged by defendants would tend to defeat that purpose. It must be remembered defendants operate as a business venture, for profit, and there are many possibilities whereby money received from the sale of lots might be diverted without adequate provision for maintenance and care of the cemeteries, which is exactly what the statute seeks to prevent.
 "We are unwilling to place such meticulous or technical definition on the words `purchase price' and `sold' as used in the statute as would defeat its manifest intention. For the practical purposes of the statute a lot is `sold' and part of the `purchase price' is required to be set aside when the terms of the purchase are agreed upon and purchase money is received pursuant thereto.
 "We construe the statute to mean, as did the trial court, that when money is received in installments by defendants pursuant to installment contact for the sale of lots — whether a deed is delivered or not and whether the sale is to be deemed technically completed or not — at least ten percent of such installment payment shall be set aside for the permanent maintenance fund." Anderson, 195 Kan. at 652-53. See also State ex rel. Stephan v. Lane, 228 Kan. 379, 385 (1980).
The obligation to make a deposit into the permanent maintenance fund arises at the time of conveyance of each burial lot. See Anderson,195 Kan. at 653; In re Matney, 241 Kan. 783, 784 (1987). The statute is written such that the corpus of the permanent maintenance fund includes the required deposit equal to 15% of the purchase price of each burial lot, such deposit to be not less than $25, as well as donations and bequests to the permanent maintenance fund. However, the corpus does not include accumulated income derived from the investment of the corpus. Attorney General Opinion No. 81-237.
It is required that the trust agreement regarding the permanent maintenance fund include a provision that "no moneys, other than income from the trust, shall be paid over to the cemetery corporation by the trustee, except upon written permission of the secretary of state." K.S.A. 1993 Supp. 17-1312, as amended by L. 1994, ch. 230, sec. 5. The income of the permanent maintenance fund is to be used exclusively for the maintenance of the cemetery. K.S.A. 1993 Supp. 17-1311, as amended. Following the determination in Anderson that statutory provisions regarding the permanent maintenance fund are to be liberally construed to effectuate the purpose for which the provisions were enacted, it is determined that income from the trust includes only those funds constituting a return earned on investment of the permanent maintenance fund. A cemetery corporation may not, without written permission of the secretary of state, be granted the use of donations, bequests, or funds in excess of statutory requirements deposited to the permanent maintenance fund.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
RTS:JLM:RDS:jm