(921 P.2d 850)

No. 75,084

WILLIAM J. GRAHAM, *Appellee*, v. PAUL M. LAMBETH, *Appellant*.

Opinion filed August 23, 1996.

*Dexter D. Eggers*, of Kansas Legal Services of Emporia, for appellant.

*Larry J. Putnam*, of Patton, Davis & Putnam, of Emporia, for appellee.

Before GERNON, P.J., Royse, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

GERNON, J.: In this appeal of a quiet title action, Paul M. Lambeth, appellant, claims that a sheriff's deed acquired after a tax foreclosure sale conveys a new and paramount title extinguishing all prior interests.

William J. Graham, appellee, contends he acquired the disputed land by adverse possession and, therefore, the district court did not have jurisdiction of the land and any sale for taxes was void.

The parties submitted the case on an agreed statement of facts pursuant to Supreme Court Rule 3.05 (1995 Kan. Ct. R. Annot. 21).

Graham purchased a tract of land from Rosenquist in 1964. Both Graham and Rosenquist agreed that the northern boundary of the tract purchased by Graham would be a barbed wire fence which encircled the tract, referred to as Tract B in the district court. The northern fence is essentially the same as when erected in 1964,

except for a section damaged by a tornado. Graham has maintained and mowed all property south of the northern fence and within the other fence lines since 1964.

In 1968, Rosenquist sold the northern tract, Tract A, to Wayman. Wayman neglected to pay some taxes, and Daniel Lambeth purchased Tract A at a sheriff's sale in 1984. Daniel Lambeth transferred the property to Paul Lambeth in 1986.

In 1994, Paul Lambeth ordered a survey of his tract based upon the description provided in the sheriff's deed. The survey disclosed that the south property line, as described on the sheriff's deed, lay approximately 10 feet south of the boundary as designated by the barbed wire fence.

The parties agree that Graham has always paid taxes on Tract B and that Lambeth has never maintained the disputed 10-foot strip. The strip contains approximately 2,090 square feet, or about 1/20th of an acre.

The trial court found that Graham had been in open, exclusive, and continuous possession of the disputed property for over 15 years under a good faith belief of ownership and that his title was superior to any grant contained in a subsequent sheriff's deed. We agree and affirm.

Lambeth attempts to show that a sheriff's deed becomes a valid conveyance in the claim of title and cites several cases he maintains supports his position. See *Womer v. Aldridge*, 155 Kan. 446, 449, 125 P.2d 392 (1942); *Shawnee County Comm'rs v. Abbott*, 155 Kan. 154, 159, 123 P.2d 318 (1942); *Van Doren v. Etchen*, 112 Kan. 380, 381, 211 Pac. 144 (1922).

The cases cited by Lambeth do show that a sheriff's deed is a valid conveyance, but none addresses a factual situation in which another claim of ownership by adverse possession had ripened into a property interest long before a sheriff's deed was issued, delivered, or filed of record.

Lambeth next contends that under K.S.A. 79-2804, the filing of a sheriff's deed conveys a clear title and, therefore, he is the owner of the 10-foot strip of land. Graham replies that the sheriff's deed did not and could not convey the 10-foot strip of land because it

was no longer a part of the parcel conveyed. We disagree with Lambeth.

"One who buys at a tax sale buys only the interest of the owner." *Gauger v. State*, 249 Kan. 86, 93, 815 P.2d 501 (1991).

"A purchaser at a tax foreclosure sale under [K.S.A.] 79-2804 is not strictly speaking an innocent purchaser nor a purchaser in good faith, but one to whom the rule of *caveat emptor* properly applies." *Isenhart v. Powers*, 135 Kan. 111, Syl. ¶ 3, 9 P.2d 988 (1932).

There is no Kansas case law on point. Other states have decided that a deed subsequent to a tax foreclosure sale can only convey what the prior owner had. Therefore, if adverse possession created an interest prior to judgment, it was not conveyed through the new title. See *Mount v. Curran*, 631 P.2d 496, 498 (Alaska 1981) (city tax deed conveyed all of prior owner's interest except a portion already obtained by another party by adverse possession); *Palm Orange Groves v. Yelvington*, 41 So. 2d 883, 885 (Fla. 1949); *De Rosa v. Spaziani*, 142 N.Y.S.2d 839, 844 (N.Y. Sup. Ct. 1955) (foreclosure of tax lien against record owner did not cut off title by adverse possession to strip of land occupied by neighbor).

There are states which hold that a tax foreclosure proceeding is an in rem action and erases all former interests in the land. *Harrison v. Everett*, 135 Colo. 55, 60, 308 P.2d 216 (1957); *Nedderman v. City of Des Moines*, 221 Iowa 1352, 1356, 268 N.W. 36 (1936); *Leciejewski v. Sedlak*, 110 Wis. 2d 337, 347, 329 N.W.2d 233 (Ct. App. 1982), *aff'd* 116 Wis. 2d 629, 342 N.W.2d 734 (1984); *In Matter of Foreclosure of Tax Liens*, 106 Wis. 2d 244, 251, 316 N.W.2d 362 (1982) (quoting *Jensen L.S. Co. v. Custer Co. et al.*, 113 Mont. 285, 295-96, 124 P.2d 1013 [1942]).

The language of the Kansas statute, while similar to the Wisconsin statute, falls short of cutting off all prior interests.

Kansas case law also suggests that the action may not foreclose all prior interests in the land, since the purchaser only buys the interest of the owner. See *Gauger*, 249 Kan. at 93; *Shawnee County Comm'rs*, 155 Kan. 154, Syl. ¶ 1; *Liebheit v. Enright*, 77 Kan. 321, 322, 94 Pac. 203 (1908).

Lambeth next argues that if Graham claimed ownership of the strip, he should have paid the property taxes and protected his

interest at the tax sale, of which publication notice was sufficient. Graham contends that under his good faith belief of ownership, he believed he was paying taxes on the disputed strip and, regardless, did not receive notice of the tax sale.

The notice argument must fail here by the logic of the facts presented. When one holds a boundary strip under a good faith belief in ownership, neither the adverse possessor nor the county foreclosing the tax lien has knowledge that the adverse possessor is an interested party. Therefore, the adverse possessor is not a named party and is not served personally.

The next question which arises is: What obligation does the adverse possessor have in relation to the payment of taxes?

The general rule is that an adverse possessor is not required to pay taxes to succeed in a claim of ownership. See *Renensland v. Ellenberger*, 1 Kan. App. 2d 659, 664, 574 P.2d 217 (1977). If the adverse possessor is not required to show payment of taxes to claim title and claims possession under a good faith belief, it would appear contradictory to be able to defeat the interest through tax foreclosure.

We conclude that Lambeth had actual notice of Graham's possession up to the fence line at the time of the tax foreclosure action. Further, the deed from the sheriff, on its face, contains no wording indicating it to be a warranty deed. Graham had been the adverse possessor for 20 years before the sheriff's deed was issued. What Lambeth took at the sheriff's sale was the tract in the sheriff's deed, less the disputed strip.

We further conclude that Lambeth's argument concerning the county "bidding-in" Tract A for delinquent taxes in 1972 and, therefore, interrupting the time frame for Graham's claim of adverse possession is not supported by the record or by the agreed statement of facts.

Affirmed.