Proceeding by Jesse F. Yelvington and wife against Palm Orange Groves, Inc., to recover possession of land acquired by county pursuant to tax foreclosure proceedings and sold to plaintiffs. From a decree granting a writ of assistance against it, defendant appeals.
Decree reversed with leave to plaintiffs to apply for a decree against county for a refund.
This cause was previously before us in Palm Orange Groves, Inc. v. Yelvington et ux., 159 Fla. 462, 32 So.2d 164.
The appellees applied to the Chancellor for a writ of assistance after receiving a deed from Volusia County to the East 1/3 of Lot 109 of Blake Subdivision, as per Plat Book E, page 150, of the Public Records of Volusia County. The county had previously received a deed pursuant to tax foreclosure proceedings under Chapter 194, F.S. 1941, F.S.A. The writ of assistance proceedings were predicated upon Section 194.54, F.S. 1941, F.S.A. Upon issuance of the writ against it, the appellant appealed.
The appellees Yelvingtons claimed that the appellant was in possession of the East 1/3 of Lot 109 of Blake Subdivision, and the appellant claims that the land of which it is possessed is the W 2/3 of Blake.
The proceedings prior to the issuance of the writ of assistance appear to have been regular as against the East 1/3 of Lot 109 of Blake, according to a plat recorded in Deed Book E, page 150.
An examination of this plat fails to show where the land of the subdivision is located. It is recited to be a town on the "Halifax River, East Florida." The plat was by "A.R. Sweet, of Pawkt, K.I." in July, 1877, recorded in Volusia County, Florida, on June 22, 1878. It seems to have been generally accepted and adopted with reference to lands in Sections 41 and 42, Township 15 South, Range 42 East. However, no land can be definitely identified according to the plat because it fails to show the location of any lot with reference to the government survey or natural monument. *Page 884 
Neither does the plat indicate that any monuments have been placed to which the plat refers.
The confusion of property lines seems to have commenced about the time of the recording of the plat. According to the plat, the east boundary of Lot 109 is the west boundary of Lot 89.
The question here is whether the lines of the west 2/3 of Lot 109 shall be taken and accepted according to the possessory claims of the appellant or according to the present day surveys. The appellant and its predecessors have been in possession of the land in question for more than 40 years, claiming it and paying taxes on it as the west 2/3 of Lot 109. The appellees claim that the appellant is in possession of the east 1/3 of Lot 109, according to the true surveys, and that they have title from the county pursuant to tax foreclosure proceedings had as authorized by Chapter 194, F.S. 1941, F.S.A.
The confusion which caused a shortage in the survey which practically eliminates the east 1/3 of Lot 109 occurred prior to a conveyance dated April 10, 1888 (defendant's Exhibit 9), when appellant's predecessor in title obtained the following property, the description of which is quoted from said exhibit:
"Lot number one hundred and nine (109) in the Town of Blake as laid down in a plat and survey of a plat and survey of a tract known as a Plan of the Town of Blake Halifax River East Florida, July, 1877, by L.R. Horne, Civil Engineer and recorded in the public records of said Volusia County in Record Book "G" July 22d 1878, said Lot 109 containing eight and three quarters acres more or less. Excepting from this conveyance a portion of said lot one hundred and nine (109) sold and conveyed by said party of the first part to O.N. Hull by deed dated March, 1888, and to which deed reference is hereby made and which said portion conveyed to said O.N. Hull lies to the eastward of the fence
lately erected across said lot by said O.N. Hull and now standing thereon." (Italics supplied.)
It has been made to appear that the fence referred to is the fence which now forms the east boundary of appellant's grove. The "Hull" deed referred to in the foregoing description is dated March 29, 1888, and is from Wm. S. Herdman and wife to O.N. Hull, and the description used therein is as follows:
"All of Lot No. eighty-nine (89) that is all their right, title and interest to and in said Lot 89 — on a plat and survey of a tract known as a plat of the town of Blake, Halifax River, Florida, July, 1877, by L.R. Horne, C.E. and recorded in the Public Records Book E, July 22, 1878. The object of this conveyance is to convey about three and one fourth acres of land in the west end of said Lot 89 (which said Lot No. 89 is 1792 feet long and is bounded on the east by the government land going to Bulo grove — is fenced by a wire fence and orange grove set out by the said O.N. Hull, which was once surveyed, staked out and by mistake as being a part of lot one hundred and nine (109). The intention is to convey all the interest of said Herdman to said lot (89)."
The fence referred to in this deed is the same one that is referred to in the deed to which reference was first above made. In 1888, then, the location error may have been made, and thenceforth it is not shown that any reference is found to the East 1/3 of Lot 109, Blake, in the Public Records of Volusia County, until the tax deed was issued to the appellants, in 1946. There was in fact no East 1/3 of Lot 109 on the tax rolls of Volusia County for many years, until in 1945 it was assessed to one L.L. Hull, a descendant of the O.N. Hull above referred to, upon which assessment the 1946 tax deed was issued.
Since 1888 the appellant and its predecessors in title have owned and paid taxes on the West 2/3, Lot 109, on which an orange grove has been cultivated from 40 to 60 years. The title to the property in question is held by appellant through an independent chain of title, the chain of title to the East 1/3 of said lot having been concluded by the deed to O.N. Hull (defendant's, now appellant's Exhibit 8), which explicitly states that in 1888 the grove's easterly fence line was at one time considered the west boundary of the east one-third of Lot 109. The *Page 885 
East 1/3 of Lot 109 of Blake was abandoned for all purposes from 1888 until 1945, and it seems that it must henceforth be considered and treated as lost.
The law respecting boundaries is as follows:
"While it is true that the title to real estate cannot be transferred by verbal agreement, yet, where the boundary between contiguous lands is uncertain or disputed, the owners of such lands may agree upon a certain line as the permanent boundary line; and, where the agreement is followed by actual occupation according to such line as the boundary, the line will be binding upon them, and their successors in title as the boundary. The line becomes binding, not upon the principle that the title to real estate can be passed by parol, but for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or the extent of their respective lands or property." Watrous v. Morrison, 33 Fla. 261, 14 So. 805, 807, 39 Am.St.Rep. 139; Kilgore v. Leary, 131 Fla. 715, 180 So. 35. See Williams v. Pichard, 150 Fla. 371, 7 So.2d 468.
"Where the exact location of a boundary line is not definitely known, a dispute involving the boundary line must be determined by looking to the conduct of the parties with reference thereto. Thus long acquiescence by the owners of adjoining lands in the location of the dividing line between their lands may, in effect, establish such a line, if the acquiescence be for a period of time equal to that fixed by the statute of limitations." 6 Thompson on Real Property, 495, citing Liddon v. Hodnett, 22 Fla. 442; Acosta v. Gingles, 70 Fla. 13, 69 So. 717.
When possession of property under a claim of ownership has been maintained for so long a time as shown under the circumstances of this case, then, even if the true location of the East 1/3 of Lot 109 should be determined to be the land of which appellant has possession, claiming it as the West 2/3 of Lot 109, it was error for the Chancellor to issue a writ of assistance to place the appellees in possession.
The claim of appellant as to the land in question is superior to appellees' paper title to the East 1/3 of Lot 109. The claim of appellant is also superior to the tax lien of the county and state as against the East 1/3 of Lot 109.
The decree appealed is reversed, with leave to the appellees to apply for a decree against the county for a refund.
ADAMS, C.J., and THOMAS and HOBSON, JJ., concur.