49 So.2d 843 (1951)
EUSE et al.
v.
GIBBS et al.
Supreme Court of Florida, en Banc.
January 9, 1951.
Rehearing Denied January 24, 1951.
*844 Maynard Ramsey, Tampa, for appellants.
Hampton, Bull & Crom and John R. Himes, all of Tampa, for appellees.
SEBRING, Chief Justice.
The appeal is from a final decree entered in favor of the plaintiffs in a suit involving the boundary line between two contiguous tracts of property.
In 1924 one Cook deeded to Euse, the defendant below, a 20-acre tract of land described in the deed as the East Half of the Northwest quarter of the Northwest quarter of section 36, Township 27 South, Range 18 East, being twenty acres more or less. The following year one Keubler conveyed to Euse the title to an adjoining 20-acre tract of land, described in the deed as the West Half of the Northwest quarter of the Northwest quarter of section 36, Township 27 South, Range 18 East, being twenty acres more or less. In 1931 Euse deeded the westerly 20-acre tract acquired from Keubler to Frank J. Costa and Maybelle Henock Costa, his wife. By agreement between Cook and Euse and Keubler and Euse, grantors and grantee in the original conveyances, and by agreement between Euse and Costa and wife, grantor and grantees in the conveyance executed in 1931, an existing fence line which ran between the tracts of land was fixed by the parties as the common boundary line between the properties. As will be noticed later, the fence line fixed by common consent as the boundary line was some 64 feet west of the true line between the properties.
In 1938 Costa entered into an agreement to deed the west 20-acre tract of land to one Greenlee; the agreement describing the property to be conveyed as the West Half of the Northwest quarter of the Northwest quarter of section 36, Township 27 South, Range 18 East, being twenty acres more or less. Sometime between 1938 and 1942 the west tract of land reverted to the State of Florida for non-payment of taxes and in 1941 a tax deed issued on the property. In the same year the tax deed holder sold his interest in the property to Costa, the holder of the former legal title, and in 1942 Costa conveyed title to the property to Greenlee pursuant to the agreement for deed. In 1947 Greenlee and wife conveyed the property acquired from Costa to the appellee Lola J. Gibbs and the latter went into possession.
At all times between the date of his purchase of the east 20-acre tract in 1924 and the institution of this suit, the appellant Euse remained in possession of all property east of the boundary line fence, claiming the entire area as his own by reason of the deed given him by the grantor Cook and by virtue of the existing agreements that the fence line should constitute the west boundary line of the property. During this period of time Euse regularly returned, and paid taxes on, the East Half of the Northwest quarter of the Northwest quarter of section 36 but never filed a separate return on the 64-foot strip of land which lay between the true line and the fence line that had been established as the boundary line between the adjoining 20-acre tracts.
In 1949 Lola Gibbs caused the property described in her deed to be surveyed by a duly licensed surveyor. She learned from the survey that the fence line was not on the true line but lay some 50 to 65 feet west of the true line between the properties. *845 She thereupon sought to take possession of the property up to the true line by attempting to erect a temporary fence along the true line. The defendant Euse resisted her efforts by a show of force and she then brought the present suit, praying in her bill that the court decree that Euse had no interest in the strip of property and that he be enjoined from interfering with or molesting her in the enjoyment, occupation and use thereof.
Evidence was submitted on the issues made by bill and answer and at final hearing the trial court rendered a decree containing, in substance, the following findings: (1) When, on August 4, 1931, Costa acquired his deed from Euse to the property which had been conveyed by Keubler to Euse and which was described as the West Half of the Northwest quarter of the Northwest quarter of Section 36, Township 27 South, Range 18 East, being twenty acres more or less, the legal title to the entire 20-acre tract, including the strip of land in controversy, passed to Costa; (2) at the time of the conveyance of the title by Euse to Costa both Euse and Costa agreed that the eastern boundary of the tract conveyed by the deed was marked and fixed by the fence line, and as the result of this agreement Costa went into actual physical possession of only so much of the 20-acre tract as was located west of the fence line; (3) Costa and his successors in title acquiesced for more than 27 years in Euse's actual possession, occupancy, and use of the strip of land lying east of the fence line; (4) by reason of his actual possession, occupancy and use of the strip of land in controversy for a period of 7 years after the execution of the Costa deed, Euse, on August 4, 1938, acquired title to the controverted strip by adverse possession; (5) when the tax deed to the West Half of the Northwest quarter of the Northwest quarter of Section 36 issued in 1941 it cut off Euse's title to this strip of land acquired by adverse possession just as it extinguished Costa's legal title to the remainder of the 20-acre tract, and it vested in the holder of the tax deed, a new, paramount and independent title from the State of Florida to the whole of the 20-acre tract; (6) the new and independent title acquired by the tax deed holder to the whole of the 20-acre tract was subsequently conveyed by the holder to Costa in 1941 and by mesne conveyances became vested in the plaintiff, Lola J. Gibbs, in 1947; (7) during the 27-year period of occupancy of the disputed strip of land by Euse the latter never returned the strip of land for taxation and never paid taxes thereon; (8) due to the fact that Euse did not pay taxes on this strip of land after the issuance of the tax deed he never acquired title by adverse possession against, and never became an "adverse possessor" of, the strip as against the tax deed holder and his successors in title; for the reason that at the time of the execution of the tax deed chapter 19254, Laws of Florida, 1939, Section 95.19 Florida Statutes, 1941, F.S.A., was in force and effect, and provided, in substance, that there could be no adverse possession without color of title unless the adverse claimant returned the property for taxation within one year after entry thereon and paid taxes annually thereafter; (9) because Euse was not an "adverse possessor" of the strip of land within the contemplation of section 95.19, supra, Euse was precluded from setting up as a defense to the suit section 196.06 Florida Statutes, 1941, F.S.A. which provides that the holder of a tax deed who does not bring suit to recover possession of property conveyed by his deed within a period of 4 years after its issuance shall not be entitled to recover possession as against a person in adverse actual posession, use and occupancy.
Based upon these findings the trial court decreed that the equities of the cause were with the plaintiffs and against the defendant; that the plaintiff Lola J. Gibbs was the owner of the westerly 20-acre tract of land described in the tax deed, including the disputed strip; and that the defendant Euse should be perpetually enjoined from going upon the premises or molesting plaintiff in her possession, occupancy, use and enjoyment of the premises.
The present appeal is from this ruling.
*846 We find substantial evidence in the record to sustain the findings of the trial court that when the conveyances of the two 20-acre tracts were made by Cook and Keubler to Euse in 1924 and 1925, respectively, the parties agreed that the fence line should constitute the true line between the properties. There is sufficient evidence to sustain the finding that when Costa purchased the westerly tract from Euse in 1931 he understood and agreed that the fence line should constitute the boundary line and understood and agreed that only so much of the westerly tract as was located west of the fence line should pass to him under his deed. The record also amply sustains the finding that at all times after Euse executed a deed to Costa in 1931 Euse remained in the actual possession of the strip of land lying between the fence line and the true line claiming the same as his own, and that the line agreed upon by the parties became established as the true line by acquiescence and recognition.
We cannot agree with the findings of the trial court that Euse lost title to the strip of land in controversy by virtue of the issuance of the tax deed in 1941 and that thereafter he was precluded from claiming title to the land by reason of the fact that he did not return the land for taxation as required by chapter 19254, Laws of Florida 1939, section 95.19 Florida Statutes, 1941, F.S.A.
We find the law to be that where the boundary line between contiguous lands is uncertain or disputed, the owners of such lands may agree upon a certain line as the permanent boundary line; and where the agreement is followed by actual occupation according to such line as the boundary, the line will be binding upon them, and their successors in title, as the boundary. "The line becomes binding, not upon the principle that the title to real estate can be passed by parol, but for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or the extent of their respective lands or property." Watrous v. Morrison, 33 Fla. 261, 14 So. 805, 807; Kilgore v. Leary, 131 Fla. 715, 180 So. 35; Williams v. Pichard, 150 Fla. 371, 7 So.2d 468; Palm Orange Groves v. Yelvington, Fla., 41 So.2d 883.
As we view the evidence in the record, Cook, Keubler, Costa and Euse were uncertain as to the exact boundary line between the adjoining tracts of land at the time deeds were executed in 1924, 1925 and 1931. In this state of uncertainty they all agreed at the time of executing the respective deeds that the fence line should constitute the true boundary. The line agreed on by these parties has been established by acquiescence and recognition for a 27-year period. The successors in title to Costa cannot now be heard to question the legality of the agreement.
The original parties having reached an agreement that the fence line should constitute the true line, the disputed strip of land west of the true line, but east of the fence, became for all purposes part of the 20-acre tract lying east of the true line, regardless of the fact that the description of such strip of land was not contained in the description in the deed given in 1924 by Cook to Euse. As stated in Price v. De Reyes, 161 Cal. 484, 119 P. 893, 894: "The line so agreed on becomes in legal effect the true line, the agreement as to the line may be in parol, and it does not operate to convey title to the land which may lie between the agreed line and the true line, but it fixes the line itself and the description carries title up to the agreed line regardless of its accuracy; the agreement as to the line is not in violation of the statute of frauds, because it does not transfer title; the parties hold up to the agreed line by virtue of their original deeds and not by virtue of the parol agreement; `the division line when thus established attaches itself to the deeds of the respective parties and simply defines, not adds to, the lands described in the deeds,' and, if more is thus given to one than the calls of his deed actually require, he `holds the excess by the same tenure that he holds the main body of his land.'"
*847 It is plain from the evidence that Euse paid taxes on the east 20-acre tract assessed each year according to the description in the deed which he acquired from Cook in 1924. The boundary line fixed by agreement of the parties attached itself to the land described in the deed from Cook to Euse and under such circumstances the payment of taxes assessed against the east 20-acre tract in accordance wtih the description contained in the Cook deed became a payment of taxes on the entire tract of land in possession of Euse under the deed and the agreement between the parties. See Price v. De Reyes, supra.
So it is that while in 1941 the legal title to the westerly 20-acre tract of land owned by Costa may have been cut off and extinguished by virtue of the issuance of the tax deed, the issuance of the tax deed had no effect upon the strip of land lying east of the fence line which theretofore had been established as the boundary line by the parties. This strip of land was and remained part of the east 20-acre tract which was owned by the defendant Euse and as to which taxes had been regularly paid. Thus it was not affected by the tax deed proceedings instituted against the west 20-acre tract and hence the provisions of chapter 19254, Laws of Florida 1939, section 95.19, Florida Statutes 1941, F.S.A. were not applicable. Neither were the provisions of section 196.06, Florida Statutes 1941, F.S.A. applicable, for the suit by the plaintiff against the defendant was not, in legal effect, a suit against a person in adverse possession as against one claiming the right of possession by virtue of the issuance of a tax deed creating a new and independent title, but was a suit by a tax deed claimant against a person lawfully in possession of his own property which he had derived by deed and agreement fixing the boundary line of such property  property which, in legal effect, was not covered by the description in the tax deed.
It follows that the plaintiff has not established that she is the owner of the fee simple title to the strip of land in controversy and hence that the decree appealed from should be reversed with directions that a decree be entered for the defendant in conformance with the principles herein stated.
It is so ordered.
TERRELL, CHAPMAN, ADAMS, HOBSON, and ROBERTS, JJ., concur.
THOMAS, J., dissents.